524 So.2d 600 (1988)
Ronald KIRTLAND
v.
FORT MORGAN AUTHORITY SEWER SERVICE, INC.
86-1298.
Supreme Court of Alabama.
April 1, 1988.
*602 James W. May, Gulf Shores, for appellant.
Bayless E. Biles of Wilkins, Bankester & Biles, Bay Minette, for appellee.
HOUSTON, Justice.
Ronald Kirtland, the defendant, appeals from a denial of his motion to set aside a default judgment. This dispute arose when Fort Morgan Authority Sewer Service (FMASS) instituted a suit against Kirtland, claiming damages for breach of contract and for fraud. As a result of Kirtland's failure to appear during the week of trial, the trial court entered a default judgment against Kirtland and in favor of FMASS for $210,000 on its breach of contract claim. Thereafter, Kirtland filed a motion to set aside the default judgment, pursuant to Rule 55(c), Ala.R.Civ.P. The trial court denied his motion. The issue here is whether the trial court abused its discretion in denying Kirtland's motion to set aside the default judgment under Rule 55(c).
In resolving this issue, we discuss and analyze the degree of discretion a trial court is vested with under Rule 55(c) and, more importantly, we examine and elaborate on the approach a trial court must take when ruling on Rule 55(c) motions.

Facts
On October 30, 1985, FMASS filed a complaint against Kirtland, alleging breach of contract and fraud. FMASS sent the summons and complaint to Kirtland's two addresses in Gulf Shores, Alabama, via certified mail. Kirtland received and accepted the summons and complaint. Although the record does not contain the written contract, Kirtland had apparently agreed to purchase 100 sewer taps from FMASS at a cost of $210,000 on June 4, 1984. According to FMASS, Kirtland refused to pay the $210,000 for the sewer taps and, consequently, breached the contract.
On September 24, 1986, Kirtland, represented by L.P. Sutley, filed an answer and a counterclaim in which he argued that FMASS had misrepresented the true cost of the sewer taps and that he had contracted to purchase sewer taps in reliance on this misrepresentation. This, according to Kirtland, constituted fraud.
On November 10, 1986, after considering Sutley's motion to withdraw, the trial court withdrew his name as attorney of record for the defendant. Kirtland asserts in his brief that he received no notice of his attorney's withdrawal. However, we found an absence of conclusive evidence in the record proving Kirtland's knowledge of Sutley's withdrawal, or lack thereof, prior to the entry of default judgment. The record does substantiate Kirtland's claim that he received no notice from Sutley of the setting of the case for trial.
On December 15, 1986, the trial court issued an order setting the case for jury trial. On the document representing the trial court's order, no specific trial date was mentioned or stated in the blanks set out for such a purpose; but, beneath the main body of the trial judge's order were the handwritten words: "This is a jury casewill be set the week of civil jury January 12, 1987." The order shows that copies of the order were mailed on December 17, 1986, to the same two addresses to which the summons and complaint were mailedPost Office Box 818, Gulf Shores, Alabama, and 1615 Old Highway, Gulf Shores, Alabama. As mentioned earlier, the record indicates that Kirtland did receive the summons and complaint via certified mail at these addresses. On January 12, 1987, Kirtland failed to appear. On January 15, 1987, in Kirtland's absence, the jury found for the plaintiff, FMASS, and assessed its damages at $210,000, and the trial judge entered a judgment accordingly.
*603 On February 6, 1987, Kirtland learned of the default judgment entered against him, and, on February 10, 1987, he filed a motion to set aside the default judgment, pursuant to Rule 55(c), Ala.R.Civ.P., arguing that he had received no notice of the trial date and that he was entitled to raise the defenses of res judicata, failure of consideration, and fraud. In his supporting affidavit, Kirtland stated that he had received no notice of the trial date either from his attorney or from the clerk's office, that the addresses listed on the clerk's file were incorrect, and, therefore, that notice to those addresses would not have apprised him of the upcoming trial. Thus, he argued that the failure of the clerk's office or his attorney to provide him with notice resulted in the deprivation of his right to present defenses. Because the trial court failed to dispose of his post-judgment motion within 90 days, the motion was automatically denied pursuant to Rule 59.1, Ala.R.Civ.P. Kirtland appeals from this denial.

Standard of Review and Issue
The applicable standard of review in appeals stemming from a trial court's granting or denying a motion to set aside a default judgment is whether the trial court's decision constituted an abuse of discretion. Johnson v. Moore, 514 So.2d 1343 (Ala.1987); Lightner Investigators, Inc. v. Goodwin, 447 So.2d 679 (Ala.1984); Roberts v. Wettlin, 431 So.2d 524 (Ala. 1983). Thus, the question sub judice is whether the trial court abused its discretion in denying Kirtland's motion to set aside the default judgment.
Prior to resolving this question, we must determine whether Rule 60(b), Ala.R. Civ.P., or Rule 55(c) applies. Because the trial judge did not rule on Kirtland's Rule 55(c) motion, we must consider the motion automatically denied by operation of law. Rule 59.1. Prior to the 1984 amendment, Rule 55(c), as originally promulgated, provided: "In its discretion, the court may set aside an entry of default and the court may set aside a judgment by default within 30 days thereafter." We interpreted this language to mean that when a trial court chose not to rule on a motion to set aside a default judgment within the prescribed 30-day period following the date of the default judgment, then Rule 60(b) displaced Rule 55(c) as the sole means of relief. Comments to Rule 55, Ala.R.Civ.P.; Elliott v. Stephens, 399 So.2d 240, 242 (Ala.1981), overruled on other grounds, Ex parte Illinois Central Gulf R.R., 514 So.2d 1283 (Ala.1987). This rule was first enunciated in Wiggins v. Tuscaloosa Warehouse Groceries, Inc., 396 So.2d 91 (Ala.1981), wherein the Court treated a timely filed Rule 55(c) motion as a Rule 60(b) motion because the trial judge did not exercise his discretion within 30 days after entry of the default judgment. In reaching this decision, the Wiggins Court stated:
"Under Rule 55(c), ARCP, a trial court, in its discretion, may set aside a judgment by default within 30 days after its rendition. After 30 days has passed since the entry of the default judgment, Rule 60, ARCP, becomes available to a party who has had a default judgment entered against him. Under Rule 55(c), the defaulting party must have the trial court act to set aside the default within 30 days after the rendition of the judgment. Merely filing a motion to set aside the default without any action by the trial court within the 30-day period is not sufficient." (Emphasis in Wiggins).
Id. at 92.
The 1984 amendments to Rule 55(c) and Rule 59.1 abrogated our case law holding that a timely filed Rule 55(c) motion converts into a Rule 60(b) motion when the trial court allows the 30-day period to expire without making a ruling.[1] Now, a *604 trial court, in its discretion, may set aside a default judgment on its own motion within 30 days after entry of the judgment or beyond the 30-day period on a party's motion filed not later than 30 days after the entry of the judgment; but, if it fails to rule on the motion within the 90-day period, the motion is deemed to be denied. Rule 55(c) and comments; Rule 59.1. Prior to 1984, Rule 55(c) limited a trial judge to a 30-day period within which to exercise his discretion. But, with the 1984 amendments, a trial judge's discretionary power continues throughout the 90-day period after entry of the default judgment, until denial of the Rule 55(c) motion by operation of law. As a result of these amendments, the stringent requirements of Rule 60(b) no longer supplant Rule 55(c) in the event the trial court fails to make a ruling. Therefore, Kirtland's motion remains a Rule 55(c) motion even though the trial judge chose not to exercise his discretion. See Ex Parte Illinois Central Gulf R.R., 514 So.2d 1283 (Ala.1987).

I. Discretionary Authority Under Rule 55(c)
Resolving questions of abuse of discretion requires an understanding of the extent of discretionary authority with which a trial judge is vested. By its plain language, Rule 55(c) confers broad discretionary authority upon trial judges. This discretion, however, is not boundless. Rule 1(c), Ala.R.Civ.P., states: "These rules shall be construed to secure the just, speedy and inexpensive determination of every action." Thus, Rule 1 mandates that trial courts construe Rule 55(c) to effectuate an expeditious, efficient, and just resolution of litigation. This requires a trial court to balance two competing policy interests associated with default judgments: 1) the need to promote judicial economy and 2) the need to preserve an individual's right to defend on the merits. See C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, Civil, § 2693 (2d ed. 1983). Application of the default judgment rule can easily lead to a polarization of these two objectives. Denying a motion to set aside a default judgment would further the goal of securing a "speedy" and "inexpensive" resolution of the action, yet would potentially deprive a litigant of an opportunity to present a viable defense. Conversely, granting a motion to set aside a default judgment would advance the cause of individual justice by insuring an adjudication on the merits, but would, in view of the concurrent delay and additional costs, impair the objective of promoting judicial efficiency. Reconciling these two opposing interests, therefore, presents a difficult task; and, for this reason, we provide trial courts with certain guidelines.
First, when exercising discretionary authority pursuant to Rule 55(c), a trial judge should start with the presumption that cases should be decided on the merits whenever practicable. Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3rd Cir.1984). The Alabama Constitution and our past opinions construing the default judgment rule support the conclusion that the interest in preserving a litigant's right to a trial on the merits is paramount and, therefore, outweighs the interest of promoting judicial economy. We have repeatedly held that the trial court's use of its discretionary authority should be resolved in favor of the defaulting party where there is doubt as to the propriety of the default judgment. Johnson v. Moore, 514 So.2d 1343 (Ala. 1987); Elliott v. Stephens, supra; Oliver v. Sawyer, 359 So.2d 368 (Ala.1978); Knight v. Davis, 356 So.2d 156 (Ala.1978). We have affirmatively acknowledged the disfavorable treatment afforded default judgments on the ground that such judgments preclude a trial on the merits. Oliver v. Sawyer, supra, at 369. We have also construed Rule 55(c) as contemplating a liberal exercise of a trial court's discretion in favor of setting aside default judgments. Ex parte Illinois Central Gulf R.R., 514 So. *605 2d 1283 (Ala.1987). Moreover, Article 1, §§ 6 and 13, Alabama Constitution of 1901, by guaranteeing the due process rights of citizens, and Article 1, § 10, by holding inviolate a person's right to defend himself in a civil action to which he is a party, elucidates this state's commitment to protect an individual's right to attain an adjudication on the merits and to afford litigants an opportunity to defend. We, therefore, emphatically hold that a trial court, in determining whether to grant or to deny a motion to set aside a default judgment, should exercise its broad discretionary powers with liberality and should balance the equities of the case with a strong bias toward allowing the defendant to have his day in court.
Second, in addition to this underlying presumption, we have established guidelines to assist a trial judge in exercising his discretionspecifically, by requiring the defaulting party to show 1) the existence of a meritorious defense and 2) an absence of willful conduct. Illinois Central Gulf, supra, at 1288. Because the Illinois Central Gulf case essentially expounded a new standard, we find it opportune to elaborate on this standard, one we feel will provide a workable touchstone for guiding trial courts in exercising their discretionary authority under Rule 55(c).
The greatest difficulty in deciding whether to grant or to deny a motion to set aside a default judgment arises in those cases falling in the expansive area between the two extremesone extreme characterized by the presentation of a clearly frivolous defense or no defense at all and by intentional and flagrant abuse of procedural rules, which come together to warrant disposition of the case by default judgment, and the other extreme characterized by inadvertent oversight coupled with an obviously meritorious defense, which come together to warrant disposition by trial. To alleviate the difficulty involved in deciding Rule 55(c) motions and to ensure that justice will be served, clear guidelines need to be established and then implemented by trial courts. Thus, we hold that a trial court's broad discretionary authority under Rule 55(c) should not be exercised without considering the following three factors: 1) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant's own culpable conduct. Illinois Central Gulf, supra; Hritz v. Woma Corp., 732 F.2d 1178 (3d Cir.1984).[2] The three-factor analysis for setting aside default judgments will be discussed in detail below.

II. Three-factor Analysis

(a) Meritorious Defense.

It is a well-established rule in Alabama that a defaulting party must demonstrate the existence of a meritorious defense as a threshold prerequisite when seeking to have a default judgment set aside. Roberts v. Wettlin, 431 So.2d 524 (Ala.1983). Recently, in Ex parte Illinois Central Gulf R.R., 514 So.2d 1283 (Ala.1987), we clarified the meritorious-defense element by stating: "To meet the meritorious-defense element, the movant need not satisfy the trial court that the movant would necessarily prevail at a trial on the merits, only that the movant is prepared to present a plausible defense." 514 So.2d at 1288. Furthermore, we seemed to suggest that a plausible defense is shown by a viable legal theory supported by a factual basis. Because of the potential for confusion over the meaning of "meritorious defense," we offer further explanation.
The rationale behind the meritorious-defense requirement is that evidence of a defense indicates that the outcome of the case could be different if it were disposed of by a trial on the merits rather than by a *606 default judgment and, therefore, justifies reopening the case so that justice can be done. If a trial on the merits would not change the outcome, the court would be wasting its and the parties' resources in setting the default judgment aside. 10 C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure, Civil, § 2697 (2d ed. 1983); Hawaii Carpenters' Trust Funds v. Stone, 794 F.2d 508, 513 (9th Cir.1986); see Illinois Central Gulf, supra, at 1288; see, also, Annot., 29 A.L.R. Fed. 7 § 6[a] (1976). In such a case, the interest in attaining a "speedy" and "inexpensive" determination of the action outweighs the interest in securing a "just" one. Rule 1(c), Ala.R.Civ.P. By making relief from a default judgment contingent upon a showing of a meritorious defense, we have, in effect, struck a balance between the countervailing interests of the judiciary's need to enforce the rules of court and a litigant's right to defend on the merits. Although the showing of a meritorious defense is a necessary and practical requirement, the quantum of evidence needed to show a meritorious defense has caused some controversy. For this reason, we now establish a standard that will be both workable and consistent with our policy objectives. The defense proffered by the defaulting party must be of such merit as to induce the trial court reasonably to infer that allowing the defense to be litigated could foreseeably alter the outcome of the case. To be more precise, a defaulting party has satisfactorily made a showing of a meritorious defense when allegations in an answer or in a motion to set aside the default judgment and its supporting affidavits, if proven at trial, would constitute a complete defense to the action, or when sufficient evidence has been adduced either by way of affidavit or by some other means to warrant submission of the case to the jury. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3rd Cir.1984); Hritz v. Woma Corp., 732 F.2d 1178 (3rd Cir.1984); Restatement (Second) of Judgments § 67 at 165 (1982).
The allegations set forth in the answer and in the motion must be more than mere bare legal conclusions without factual support; they must counter the cause of action averred in the complaint with specificity namely, by setting forth relevant legal grounds substantiated by a credible factual basis. Such allegations would constitute a "plausible defense." See Illinois Central Gulf, supra, at 1288; C. Wright, supra, at § 2697; Turner Broadcasting System, Inc. v. Sanyo Electric, Inc., 33 B.R. 996, 1002 (N.D.Ga.), aff'd, 742 F.2d 1465 (11th Cir.1983). The case of Moldwood Corp. v. Stutts, 410 F.2d 351 (5th Cir.1969), illustrates this point of view. In Moldwood, the Court of Appeals, in reviewing the decision of the District Court for the Northern District of Alabama, held that the District Court did not abuse its discretion in refusing to set aside a default judgment entered against a defendant who had failed to advance a meritorious defense. Construing the term "meritorious defense," the Court of Appeals stated:
"It is universally recognized as an essential to the obtaining of relief from a default judgment entered with jurisdiction that there should appear in the motion a clear and specific statement showing, not by conclusion, but by definite recitation of facts, that an injustice has been probably done by the judgment, in that the debt or demand was not owing; that there was a valid defense to it, and that on another trial there will in reasonable probability be a different result. All of the authorities require at least this much."
Id. at 352, quoting Atlantic Dredging & Constr. Co. v. Nashville Bridge Co., 57 F.2d 519, 521 (5th Cir.1932).

(b) Absence of Prejudice to the Nondefaulting party.

When ruling on a Rule 55(c) motion, the trial judge must also consider the prejudice befalling the nondefaulting party if the default judgment is set aside. See Oliver v. Sawyer, 359 So.2d 368, 370; Johnson v. Moore, 514 So.2d 1343 (Ala.1987). The setting aside of a default judgment delays a final termination of the litigation. This delay frustrates or impedes a plaintiff's efforts to recover on his claim and causes *607 him to incur additional costs. Moreover, the delay may facilitate fraud and collusion, result in loss of evidence, and hinder discovery. Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656-57 (3rd Cir. 1982); C. Wright, supra, at § 2700. Federal cases construing this requirement suggest that the prejudice must be substantial to justify a denial of a motion to set aside a default judgment. See United Coin Meter Co. v. Seaboard Coastline R.R., 705 F.2d 839 (6th Cir.1983) (mere delay in satisfying a plaintiffs' claim, if it should succeed at trial, is not sufficient prejudice); Davis v. Musler, 713 F.2d 907 (2d Cir.1983) (delay alone is insufficient; delay must result in loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud); Rasmussen v. W.E. Hutton & Co., 68 F.R.D. 231 (N.D.Ga.1975) (when a defaulting party has a meritorious defense, plaintiff would not be unduly prejudiced by a hearing on the merits). The rationale for requiring substantial prejudice is that the federal courts are vested with discretionary power to impose costs as a means of alleviating the adverse affects of delay. The underlying presupposition is that minimal prejudice can be effectively offset "by requiring the defaulting party to provide a bond to secure costs, to pay court costs, or to cover expenses of the appeal." C. Wright, supra, § 2200; Feliciano, supra, at 657; Barber v. Turberville, 218 F.2d 34 (D.C.Cir.1954); cf. Annot., 3 A.L.R. Fed. 956 (1970).
Awarding costs as a means of mitigating the prejudice suffered by the plaintiff upon the setting aside of a default judgment is a practical and fair rule, one that has received the imprimatur of this Court. In Mosaic Templars of America v. Hall, 220 Ala. 305, 124 So. 879 (1929), we reviewed the propriety of a trial court's decision to withdraw its prior order that granted the defendant's motion to set aside a default judgment on the condition that the defendant compensate the plaintiff for the delay by covering his costs. The trial court withdrew its order setting aside the default judgment when the defendant failed to pay the costs as mandated. In affirming the trial court's decision, we held, inter alia, that the "court may impose reasonable terms, such as the payment of costs, as a penalty for" an attorney's negligence in failing to appear. 220 Ala. at 306, 124 So. at 880. The Mosaic Templars decision was followed and clarified by Pinkleton v. Steele, 57 Ala.App. 294, 328 So.2d 298 (1975). Thus, we hold that the prejudice warranting denial of a Rule 55(c) motion must be substantial. If the harm suffered by the nondefaulting party, as by a delay in vindicating its rights, could be mitigated by the imposition of reasonable terms and conditions, the prejudice is not substantial. Moreover, the task of determining whether the defendant has caused substantial prejudice is a burden to be borne by the trial judge, after review of the facts, and not by the plaintiff.

(c) Culpability of the Defaulting Party's conduct.

Lastly, a trial court must consider the culpability of the defaulting party's conduct. Conduct committed wilfully or in bad faith constitutes culpable conduct for purposes of determining whether a default judgment should be set aside. Negligence by itself is insufficient. Illinois Central Gulf, supra, at 1288; Hritz v. Woma Corp., 732 F.2d 1178 (3rd Cir.1984); Agio Industries, Inc. v. Delta Oil Co., 485 So.2d 340, 342 (Ala.Civ.App.1986). See, also, Selby v. Money, 403 So.2d 218 (Ala.1981).[3] *608 Willful and bad faith conduct is conduct characterized by incessant and flagrant disrespect for court rules, deliberate and knowing disregard for judicial authority, or intentional nonresponsiveness. Agio Industries, supra, at 342; Illinois Central Gulf, supra, at 1288. Such conduct justifies a finding of culpability and thus militates against an exercise of discretion in favor of the defaulting party. The strong policy of resolving legal issues on the merits must yield when a defaulting party has committed intentional acts that are contrary to procedural rules. Carlucci v. Piper Aircraft Corp., 102 F.R.D. 472 (S.D.Fla. 1984); Agio Industries, supra, at 342.
However, a defaulting party's reasonable explanation for inaction and non compliance may preclude a finding of culpability. See Illinois Central Gulf, supra, at 1288; see, also, Annot., 29 A.L.R.Fed 7, § 5. The following opinionsall of which reverse a trial court's refusal to set aside a default judgmentexemplify the types of situations where a trial court might, in its discretion, find evidence of a reasonable explanation for a defaulting party's delay or unresponsiveness: Bachner v. Citizens Bank, 512 So.2d 93 (Ala.1987) (default resulted from an attorney's reliance on misinformation from the clerk's office as to the granting of a continuance); Oliver v. Sawyer, 359 So.2d 368 (Ala.1978) (default caused in part by the advanced age and illiteracy of the defendant that prevented a full understanding of the summons and complaint); Knight v. Davis, 356 So.2d 156 (Ala.1978) (default due to defendant's lack of knowledge of his attorney's withdrawal prior to trial); White v. Trantham, 513 So.2d 641 (Ala.Civ.App.1987) (failure to appear attributable to attorney's mistake in not placing trial date on calendar); Lightner Investigators, Inc. v. Goodwin, 447 So.2d 679 (Ala.1984) (failure to appear deemed excusable where defendant relied on assurances that he would be represented by counsel).
Illinois Central Gulf, supra, in which this Court held that a trial court abused its discretion in denying the defendants' Rule 55(c) motion, is particularly illustrative of this point. In that case, an attorney's failure to answer a complaint within the prescribed time resulted in a default judgment against his client. The attorney's default was attributable not to willful disregard for court rules but to the innocent mistake of the attorney's law firm in failing to file a responsive pleading in his absence. In an opinion by Justice Jones, we held that the defendant's law firm's neglect constituted a reasonable explanation.

III. Summary
Our articulation of a three-part test dispositive in ruling on Rule 55(c) motions should not be construed as an onerous restriction on a trial judge's discretionary power; balancing the equities of each case is a duty that lies within the domain of the trial court. On review, a trial court's decisions should be looked upon with great deference, because, as Professor Wright states: the trial judge "is the person most familiar with the circumstances of the case and is in the best position to evaluate the good faith and credibility of the parties." C. Wright, supra, § 2693. As one Court of Appeals has stated, it is the trial judge who has the "opportunity to weigh the equities of the case." Madsen v. Bumb, 419 F.2d 4, 6-7 (9th Cir.1969). However, the mandate of Rule 1, viewed in light of our predisposition toward providing litigants with a full adjudication on the merits and our establishment of certain guidelines, makes it clear that a trial court's discretionary power is not unbridled. In exercising its discretion under Rule 55(c), a trial court must first presume that a defaulting party has a right to a trial on the merits; and, then, with this presumption in mind, the trial court must consider the three-factor analysis. Thus, when a trial judge scrutinizes a defaulting litigant's case and determines that a meritorious defense exists, that either little or no prejudice will beset the nondefaulting party if the default judgment is set aside, and that the reason for the default is not attributable to culpable conduct, then the litigant's right to a full trial, in the interest of justice, outweighs the countervailing interest of promoting "speedy" and "inexpensive" resolutions of actions. In such cases, a litigant should *609 rightfully receive his day in court, and a default judgment would not be appropriate.

IV. Merits
After reviewing Kirtland's answer, his motion to set aside the default judgment, and his affidavits, we conclude that Kirtland has shown the existence of a meritorious defense. In answering FMASS's complaint, Kirtland responded by making general denials, by alleging breach of contract on the plaintiff's part, and by counterclaiming for fraud. The counterclaim suffices for purposes of showing a meritorious defense. Kirtland alleged with particularity that FMASS misrepresented the cost of the sewer taps and therefore defrauded him. The allegations of fraud, if proven at trial, could change the outcome of the case. Moreover, Kirtland asserts the defense of res judicata in his motion to set aside and supports this defense with an affidavit that incorporates as an exhibit the entire record of a prior case involving Kirtland as the plaintiff and FMASS as one of the defendants. In this prior case, the trial court ruled in favor of Kirtland, holding that he "prevailed on all issues." The res judicata effect of this prior case could very well constitute a complete defense. Kirtland's allegation of this defense is not a mere legal conclusion, but one supported with factual specificity, and, therefore, it sufficiently counters the substance of the complaint.
Next, it is doubtful that FMASS would be substantially prejudiced by a setting aside of the default judgment. The delay in realizing satisfaction on the $210,000 judgment can be offset by the imposition of costs on Kirtland. We have found no evidence of fraud, collusion, or loss of evidence that would substantially harm FMASS.
Lastly, the record is not determinative of the issue of whether Kirtland committed culpable conduct in failing to appear the week of trial; however, we found no evidence in the record of intentional disregard for court orders or of reprehensible nonresponsiveness. In fact, prior to his default, Kirtland had clearly manifested an intent to defend by filing a timely answer and a motion to dismiss. Kirtland's purported lack of knowledge of the trial date, apparently due to Sutley's withdrawal and to an address change, would seem to constitute a reasonable explanation for his default. From the record, it appears, therefore, that Kirtland acted neglectfully, but not in bad faith.

V. Conclusion
We recognize that, by holding that a trial court should consider the three-factor analysis when ruling on Rule 55(c) motions, we have departed from our prior opinions. For this reason, our opinion in this case will apply prospectively, and we therefore refrain from holding in this case that the trial court abused its discretion. However, we reverse the order denying Kirtland's motion to set aside the default judgment and remand this cause to the trial court with instructions to reconsider its denial of Kirtland's motion to set aside the default judgment in light of the three-part test enunciated herein; the court should make explicit factual findings regarding the issues of whether FMASS will be unduly prejudiced if the default judgment is set aside and whether Kirtland's default is attributable to culpable conduct.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES, ADAMS and STEAGALL, JJ., concur.
BEATTY, J., concurs in the result.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
Because I believe that the trial judge did not abuse his discretion in refusing to set aside the default judgment in this case, I must respectfully dissent.
According to Kirtland, "[t]he linchpin of [his] position on this appeal is that he received no notice of the fact that his case would be called for trial on January 12, 1987." He claims that this fact is "uncontradicted." The appellee disagrees with Kirtland's statement that the evidence is uncontradicted on this point, and it appears to me that there is evidence in this record *610 upon which the trial court could find that either Kirtland had notice of the trial setting, or that it was his own fault if he did not have notice.
As the majority's statement of the facts shows, Kirtland was sued on October 20, 1985, for breach of contract and fraud, and, being represented by counsel, filed several pleadings in answer to the complaint, including an answer and a counterclaim on September 24, 1986. Kirtland's counsel was allowed by the court to withdraw on November 10, 1986. Kirtland claims, for the first time here on appeal, that he had no notice that his counsel had withdrawn. Admittedly, as the majority states, there is no conclusive evidence, one way or the other, to prove Kirtland's knowledge of his attorney's withdrawal, but I would think that the trial court, when it allowed counsel to withdraw, had a right to assume that Kirtland's attorney had followed all the rules of professional conduct that apply. In other words, the trial judge, even now, may be unaware that Kirtland is claiming that he did not know that his lawyer had withdrawn from his case.
Kirtland's main point is that he received no notice of the setting of the case for trial. The record shows that the notice was sent to the address that Kirtland's own lawyer had listed in court records as his address. Furthermore, the record shows that the address is the one at which Kirtland accepted service of the summons and complaint. It was the address listed on the clerk's case action summary, and the record shows that the clerk indicated on the trial judge's order setting the case for trial "copies mailed 12-17-86."
While I do not necessarily disagree with the "new" test the Court has ordered to be applied in default judgment cases "prospectively," it seems most inappropriate to apply even that test and reverse this case, and I believe the Court's use of Rule 1, Ala.R.Civ.P., to justify the reversal of the trial court's ruling is also inappropriate under the circumstances of this case.
Rule 1 does state that the Rules "shall be construed to secure the just, speedy and inexpensive determination of every action," but it would appear that the application of Rule 1 would demand an affirmance of the judgment rather than a reversal.
This case was filed in October 1985, and now that it has been reversed for a trial, the determination of the action has not been "speedy." The determination of this action has not been "inexpensive." Both parties have had to litigate the matter in the trial court and in this Court. Furthermore, is this the "just" result? I think not.
The majority states in its summary of this opinion that: "a trial court's decisions should be looked upon with great deference because, as Professor Wright states: the trial judge `is the person most familiar with the circumstances of the case and is in the best position to evaluate the good faith and credibility of the parties.'" Because I believe the majority fails to accord to this appellee the benefit of this well-stated rule, I must respectfully dissent. I believe that the trial judge in this case was the person "most familiar with the circumstances of the case" and that he was "in the best position to evaluate the good faith and credibility of the parties" (emphasis added).
I am a strong believer in the right of litigants to have their day in court, but I also strongly believe in the right and duty of trial judges to control their dockets and to punish parties who are guilty of culpable conduct. I believe there is enough evidence in this record to sustain the trial judge's decision to award the default judgment and his decision not to set it aside. I would affirm his judgment.
NOTES
[1] Rule 55(c) now provides:

"(c) Setting Aside Default. In its discretion, the court may set aside an entry of default at any time before judgment. The court may on its own motion set aside a judgment by default within 30 days after the entry of the judgment. The court may also set aside a judgment by default on the motion of a party filed not later than 30 days after the entry of the judgment."
Rule 59.1 provides:
"No post-judgment motion filed pursuant to Rules 50, 52, 55 or 59 shall remain pending in the trial court for more than 90 days.... A failure by the trial court to dispose of any pending post-judgment motion within the time permitted hereunder, or any extension thereof, shall constitute a denial of such motion as of the date of the expiration of the period."
[2] Several federal courts in addition to the Third Circuit apply this three-part test; See Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372 (D.C.Cir.1980); United Coin Meter Co. v. Seaboard Coastline R.R., 705 F.2d 839 (6th Cir. 1983); Traguth v. Zuck, 710 F.2d 90 (2d Cir. 1983); Pena v. Seguros La Comercial, S.A., 770 F.2d 811 (9th Cir.1985). Hibernia National Bank v. Administration Central, Sociedad Anonima, 776 F.2d 1277 (5th Cir.1985); Oliner v. McBride's Industries, Inc., 102 F.R.D. 561 (S.D.N. Y.1984); Quaker Valley School Dist. v. Employers Mut. Liability Ins. Co. of Wisconsin, 96 F.R.D. 423 (W.D.Pa.1983).
[3] The primary justification for dismissing suits for want of prosecutionwillful conduct and intentional non-complianceapplies equally well to a trial court's decision refusing to set aside a default judgment. In Selby v. Money, 403 So.2d 218 (Ala.1981), in which this Court affirmed a trial court's dismissal of a case for want of prosecution, we stated:

"In Alabama, and many federal courts, the interest in disposing of the litigation on the merits is overcome and a dismissal may be granted when there is a clear record of delay, willful default or contumacious conduct by the plaintiff.... Willful default or conduct is a conscious or intentional failure to act.... `Willful' is used in contradistinction to accidental or involuntary noncompliance. No wrongful motive or intent is necessary to show willful conduct."
Selby v. Money, at 220-21 (citations omitted).